## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.  1:20-cv-184

**JANE DOE**,

Plaintiff,

v.

**ROARING FORK SCHOOL DISTRICT** and **PATRICK ENGLE,** in his individual capacity.

Defendants.

---

### FIRST AMENDED COMPLAINT AND JURY DEMAND

---

Plaintiff Jane Doe ("Plaintiff" or "Ms. Doe"), for her First Amended Complaint against Defendants, Roaring Fork School District and Patrick Engle, states as follows:[1]

### PARTIES, JURISDICTION AND VENUE

1.      Plaintiff is a Colorado resident who lives in Glenwood Springs, Colorado.

2.      Defendant Roaring Fork School District ("RFSD") is a Colorado public school district.  RFSD receives federal funding and is subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX").

3.      Upon information and belief, Defendant Patrick Engle ("Assistant Principal Engle") is a Colorado resident. During the 2017-2018 school year, Assistant Principal Engle was employed by RFSD as the assistant principal of Glenwood Springs High School ("GSHS").

---

[1] Due to the sensitive nature of the abuse contained herein as well as the ages of the students involved, Plaintiff asks this court to permit her to proceed under the pseudonym of "Jane Doe" and permit the parties to refer to the student who assaulted her as "John Smith."  Plaintiff will confer with defendant further on this issue and will address with the court no later than the case management conference or at any time sooner requested by the Court.

4.      This Court has jurisdiction over this action under 28 U.S.C. §1331 and 28 U.S.C. §1367.

5.      Venue is proper in this Court under 28 U.S.C. §1391(b)(1) and (2).

## GENERAL ALLEGATIONS

### Summary of Claims

6.      In the fall of 2016, Ms. Doe was a female sophomore at the Glenwood Springs High School ("GSHS")

7.      During that semester, Ms. Doe was sexually assaulted by her male classmate John Smith[2].

8.      Ms. Doe reported this assault to police in the summer of 2017.

9.      Shortly thereafter, in the fall of 2017, RFSD was notified by the Office of the District Attorney that Mr. Smith was being prosecuted for sexual assault in the juvenile justice system.

10.     In October 2017, after continuing to struggle to attend school with Mr. Smith, Ms. Doe explained to GSHS Assistant Principal, Patrick Engle, that she had been assaulted by Mr. Smith and was having difficulty dealing with his presence at school, and with the physical and verbal harassment she was experiencing from his friends because she was a woman who had been sexually assaulted and because she chose to report that assault.

11.     Over the course of the next few months, Ms. Doe and her parents repeatedly discussed the matter with the school administrators and requested guidance as to how Ms. Doe could safely continue to attend GSHS as Plaintiff was struggling to attend school with the

---

[2] This is also a pseudonym in the interest of protecting that student's privacy.

offending student and was continuing to experience gender-based physical and verbal harassment from her peers.

12.    Ms. Doe and her parents repeatedly reported that Ms. Doe was being followed by Mr. Smith, harassed at school, and threatened by her peers, yet GSHS did nothing.

13.    By February 2018, Plaintiff's grades and emotional well-being had suffered, as she went to school in constant fear of run-ins and retaliation from Mr. Smith.  Plaintiff ultimately transferred schools due to the constant retaliation and hostility at GSHS.

14.    The juvenile court adjudicated Mr. Smith as a sex offender for assaulting Ms. Doe in April of 2018.  GSHS expelled Mr. Smith.

15.    When Mr. Smith's parents immediately complained about the expulsion and without any process or notice Plaintiff, Mr. Smith's expulsion was reversed.  Mr. Smith graduated with his class at the end of the semester.

16.    Due to Mr. Smith's presence at school, Ms. Doe did not return to GSHS.

**RFSD'S ACTUAL NOTICE OF MS. DOE'S SEXUAL ASSAULT**

17.    While on a date in October 2016, Ms. Doe was sexually assaulted by Mr. Smith, a fellow classmate at GSHS.

18.    Ms. Doe was initially too ashamed to disclose what had happened to her.  Instead, she began to isolate herself from the school activities that she enjoyed, including theater and sports, and became increasingly depressed and crying herself to sleep at night.

19.    The impact of Mr. Smith's assault weighed on her and began to impact her performance at school as well. Ms. Doe's teachers at GSHS noted that Ms. Doe was struggling to participate at school and began to contact her parents concerning a possible risk of suicide.

20.     In March 2017, Ms. Doe joined an off-campus trip to Germany with GSHS teacher, Maya Burns.  Ms. Doe trusted Ms. Burns and decided to disclose her assault.  Ms. Burns referred Ms. Doe to counseling and, in the summer of 2017, Ms. Doe disclosed her assault to her therapist and parents. The report was referred to the Glenwood Springs Police Department for investigation.

21.     In August 2017, prior to the beginning of her junior year, Ms. Doe and her mother had a meeting with Ms. Doe's guidance counselor, Mrs. Kochevar.  Ms. Doe explained that she had been sexually assaulted and that the police were currently investigating.  She did not identify Mr. Smith as the assailant but requested that she be allowed to review class enrollment lists to make sure that she was not enrolled in any classes with her assailant.

22.     In late September 2017, the school received written notice from the Glenwood Springs District Attorney's Office that Mr. Smith was being prosecuted as a juvenile for sexual assault.

23.     GSHS ignored the notice.

24.     Ms. Doe continued to struggle with the aftermath of the assault and Mr. Smith's presence at GSHS.  She frequently encountered Mr. Smith in the hallways, and he would follow her to and from her classrooms.  As a teaching assistant to one of Ms. Doe's teachers, Mr. Smith would also show up in Ms. Doe's classes unexpectedly.  Mr. Smith's friends also sought her out and harassed her because of the sexual assault and because of her decision to report being a victim of an assault. This including following her, pulling her backpack, loudly talking about her, and accusing her of gender-based stereotypes about women, such as that she was always "causing drama," and that she was "just trying to get attention."

25.     In October 2017 and looking for help, Ms. Doe went to then Assistant Principal Patrick Engle and told him that she had been assaulted by Mr. Smith, and that she was being harassed and intimidated by him and his friends and felt unsafe at GSHS.

26.     Ms. Doe disclosed both the assault and that Mr. Smith was the offender and further told Mr. Engle that she was really struggling at school. As a result of Mr. Smith's constant presence and the harassment from his friends, Ms. Doe's education was suffering, and she was unsure whether to remain at GSHS. Mr. Engle did nothing in response to this conversation and Ms. Doe left feeling like he did not believe her.

27.     After Ms. Doe shared these feelings with her family, Ms. Doe's mother called Mr. Engle concerned.  She and Mr. Engle discussed Mr. Smith, his sexual assault of her daughter and that Ms. Doe was struggling to stay at GSHS.  She also updated Mr. Engle regarding the status of the prosecution of Mr. Smith.

28.     Assistant Principal Engle still took no action despite having authority to conduct disciplinary measures at the school.

29.     Shortly thereafter, while at a JV volleyball game at GSHS, Ms. Doe's father had a conversation with GSHS Assistant Principal Gayla Rowe where they discussed the challenges that Ms. Doe was facing at school because of Mr. Smith, and Ms. Rowe expressed her sympathy for the situation the family was in.

30.     Assistant Principal Rowe took no action despite having authority to conduct disciplinary measures at the school.

31.     Several weeks later, as she continued to struggle at school, Ms. Doe had a conversation with GSHS Athletic Director Craig Denney. Ms. Doe trusted AD Denney and hoped for a better response than she received from Mr. Engle. She told him what had happened, including

that she was assaulted by Mr. Smith and that the school environment had become increasingly hostile to her as a victim of sexual assault. When Ms. Doe shared that Mr. Smith was the offender, Mr. Denney responded that Mr. Smith was one of his football athletes and he could not believe that one of his athletes would ever do something like that.

32.     Athletic Director Craig Denney took no action.

33.     Within a few weeks of these two conversations, in November 2017, Ms. Doe's parents also discussed the assault and ongoing criminal proceedings with several of her GSHS teachers at parent-teacher conferences, in order to determine how the sexual assault had been affecting Ms. Doe and what could be done to support her best at GSHS. While Ms. Doe's teachers were sympathetic, nothing was done to address the hostile environment and Ms. Doe was being forced to endure.

## THE HOSTILE EDUCATIONAL ENVIRONMENT AT GSHS

34.     Despite the fact that several administrators now knew of the assault, no safety measures or interim accommodations were put in place to assist Ms. Doe's understandable fears and anxiety about attending GSHS with her assailant and his friends. Ms. Doe's depression continued to worsen, and she became increasingly scared of running into Mr. Smith or his friends at school.  In November 2017, Ms. Doe for the first time in her life was placed on an anti-depressant in an effort to help her to continue to attend school and manage her anxieties.

35.     Throughout the fall of 2017, Ms. Doe continued to suffer repeated instances of bullying and harassment by her fellow students who perceived her sexual assault as likely consensual and were angry that she had reported Mr. Smith for sexual assault.  In particular, Ms. Doe was targeted by Mr. Smith's friends, who would seek her out and harass her in the hallways at school, often coming up behind her, following her and motioning as though they were going to

6

punch her. Ms. Doe explained to Mr. Engle that she felt like she was being ganged up on and did not feel safe at school.

36.     Ms. Doe's classmates also harassed her online, including commenting on Instagram posts questioning whether she had actually been raped, taunting her for the assault, sending Ms. Doe pictures of Mr. Smith through Snapchat, and warning her that she had ruined Mr. Smith's life enough and that she should leave him alone.

37.     Mr. Smith also continued to follow Ms. Doe while at school and would park near her in the school parking lot.  On one instance, Ms. Doe was leaving the school when Mr. Smith and his friends were driving in the parking lot and the car.  The car deliberately sped up towards her while she was leaving school as if they were going to hit her.  When Ms. Doe reported this to GSHS, they moved her to the teacher's parking lot but took no disciplinary action and did not inform any of the high school teachers. As a result, teachers frequently became angry at Ms. Doe for parking in the wrong lot.

38.     On December 13, 2017, only several hours after appearing in court on his sexual assault charges, Mr. Smith and his friends mocked the assault by engaging in a crude prank involving a sex toy in the shape of a penis in the GSHS parking lot and immediately posting the prank to multiple social media networks.  Ms. Doe's classmates began sending screenshots of the postings to her via Snapchat, asking her if she had seen what Mr. Smith had done.

39.     The next day, on December 14, 2017, Ms. Doe reported what had happened in the parking lot and again discussed the assault with Mr. Engle. She explained that she needed help, wanted to be able to avoid running into Mr. Smith at school, and wanted to feel safe at school.

40.     Ms. Doe's father had also been forwarded photos from the December 13th event. Frustrated that Mr. Smith appeared to be making light of the ongoing court proceedings involving

a serious sex offense, he immediately sent these photos to Mr. Engle and Chris Dietrich, the school resource officer from the Glenwood Springs Police Department. He also followed up with an additional call to Mr. Engle regarding Mr. Smith's conduct toward Ms. Doe at school. Upon information and belief, no disciplinary action was ever taken against Mr. Smith.

41.     While Ms. Doe was repeatedly told that the situation was being "dealt with," no interim measures were put in place to protect Ms. Doe from further harassment, and to allow her to continue her education at GSHS.

42.     The hostile environment at GSHS continued and escalated through the winter.  In January 2018, Ms. Doe's friends overheard one of Mr. Smith's friends making death threats toward Ms. Doe, including that if they got the chance they would "strangle her."  When Ms. Doe reported this to Mr. Engle and asked for help, she was told that there was nothing that could be done because "it is not illegal to be an asshole."

43.     On January 24, 2018, Mr. Smith entered into a plea bargain in his sexual assault case which afforded him the opportunity to stay out of youth corrections and focused on sexual abuse specific treatment and probation.

44.     In early February 2018, Ms. Doe participated in a poetry slam at GSHS, where she worked up the courage to share a poem with her classmates about her rape.  After hearing her read the poem, GSHS principal Paul Freeman approached Ms. Doe, handed her his business card, and chastised her for disclosing so much information stating that she "didn't have to say all that."  Ms. Doe was hurt by his response and got the message that not even the principal was going to help her.

45.     Throughout early 2018, Ms. Doe's parents continued to check in with Ms. Doe's teachers about her mental health issues and safety at school. As Ms. Doe's depression and anxiety

worsened, her parents became increasingly concerned about the possibility of self-harming behaviors or suicidal thoughts and wanted to make sure that she was supported and protected at GSHS.

46.     At the same time, things at GSHS had gotten so bad that they also began to explore alternative educational arrangements with Ms. Doe.  At the end of February 2018, Ms. Doe toured Bridges High School ("BHS") for the first time.  BHS was a much smaller, alternative high school within the Roaring Fork School District.  Although Ms. Doe did not want to leave her friends, teachers, and classes at GSHS, she felt that she had no choice but to leave GSHS for her own safety.

47.     During these conversations with Ms. Doe's GSHS teachers and potential faculty at BHS, Ms. Doe's parents became increasingly frustrated that additional actions were not being taken to protect their daughter at GSHS.  On March 5, 2018, Ms. Doe's mother met with Mr. Engle to determine whether it was possible for Ms. Doe to safely continue to attend GSHS. They discussed the complete lack of protection for Ms. Doe and asked if the school had taken or would be taking any actions against Mr. Smith.  Mr. Engle acknowledged that the school had done nothing to help their daughter yet offered no other assistance to her daughter.

48.     In a follow-up email on March 9, 2018, Ms. Doe's mother again asked, "[w]hat actions did the school put in place in this situation?"  Mr. Engle responded, "Unfortunately (for this situation as it pertains directly to [Ms. Doe] as we had talked about, the school has taken no actions."

49.     Disturbed by the lack of response, Ms. Doe's mother reached out directly to RFSD Superintendent Rob Stein.  She left him multiple messages during early March requesting to meet to discuss the situation at GSHS, but Mr. Stein simply referred her back to GSHS administrators.

50.     On March 13, 2018, Ms. Doe and her parents had an additional meeting with Mr. Engle, and GSHS Principal Paul Freeman.  Despite repeated notice to GSHS about the assault, and that Mr. Smith was the offender, Principal Freeman claimed that he was unaware that GSHS had any knowledge of who the victim in Mr. Smith's sexual assault was, and, that "it could have been anyone at a bar," which was an odd reference given the ages of the students.  Mr. Freeman expressed his concern that Ms. Doe felt like she was being driven out of GSHS because it was "hell" to be there but asked what the school could realistically do with only forty days left in the school year.

51.     That same day, Ms. Doe left GSHS and enrolled at BHS.

52.     Defendant Roaring Fork School District has policies that, though fairly antiquated, require the school district to investigate allegations of harassment or discrimination, take statements by any witnesses, prepare a written report to submit to the district superintendent, make findings on whether harassment had occurred or schedule the matter for a hearing, make determinations as to any appropriate sanction, and provide any appeal that is provided by any law, as does Title IX.

53.     None of these provisions were implemented by RFSD.

## ONGOING IMPACT TO MS. DOE'S EDUCATION

54.     On April 11, 2018, Mr. Smith was adjudicated (convicted) in the juvenile court for sexually assaulting Ms. Doe and plead to a lesser charge, which required him to participate in sex offender specific probation and therapy.

55.     Ms. Doe's parents received an email from Mr. Engle notifying them that Mr. Smith was now expelled from GSHS for the remainder of the year.  Ms. Doe was relieved to know that she could finally return to her classwork, classmates, and teachers at GSHS.

56.     Six days later Ms. Doe's parents were notified that RFSD's School Board was reversing their decision and that they had decided to let Mr. Smith continue at GSHS through his graduation. Ms. Doe's parents were further advised that Ms. Doe had no right to address the matter further or appeal the Board's decision.

57.     The impact of the decision to allow Mr. Smith back to GSHS was devastating for Ms. Doe especially since the outcome of the juvenile proceedings remained confidential.  Her former classmates predominantly assumed that she must have been lying about the assault being nonconsensual and began verbally harassing her with taunts perpetuating traditional gender stereotypes of women as liars and promiscuous, including "crazy bitch" and "pornstar."  After one of Ms. Doe's friends posted a supportive post on Instagram about Ms. Doe, her former classmates commented, questioning her "rape?" and suggesting that it was more likely that she had raped Mr. Smith than that he had raped her.

58.     Ms. Doe's friends also received harassing texts directed at her, suggesting that they should stop hanging out with Ms. Doe and that she was a liar.  One classmate even texted "we need to show [ Ms. Doe's friend] and Ms. Doe what rape actually is."  Student A reported this text to Mr. Engle.

59.     When GSHS attempted to keep Mr. Smith from attending prom as the sole consequence for his sexual assault, GSHS classmates started and circulated a petition to instead allow Mr. Smith to attend prom and to prohibit Ms. Doe from attending.

60.     While Ms. Doe had hoped that Mr. Smith's adjudication would allow her to finish out her senior year at GSHS, the re-victimization and harassment that Ms. Doe experienced after Mr. Smith was allowed to return made it impossible to contemplate going back. Mr. Smith continued at GSHS until his graduation. Ms. Doe was forced to stay at BHS.

61.     In April 2018, Superintendent Stein engaged investigator Larry Nisbet to investigate RFSD's handling of Ms. Doe's situation.  After reviewing numerous documents and speaking with nine witnesses, Mr. Nisbet issued a report acknowledging that GSHS had failed to investigate further when it initially received notice from the District Attorney's office that Mr. Smith had been charged with sexual assault.

62.     Mr. Nisbet's report also acknowledged that, contrary to Principal Freeman and Superintendent Stein's representations, GSHS had been aware that Ms. Doe was a victim of a sexual assault perpetrated by Mr. Smith by no later than the fall semester 2017

63.     Mr. Nisbet concluded that there was a need for a more consistent formal process and procedures at GSHS in order to properly investigate and determine disciplinary action, particularly in the case of serious criminal charges, and that there were significant inconsistencies in how disciplinary issues were handled within GSHS.

### SEVERE AND PERVASIVE IMPACT TO MS. DOE

64.     Ms. Doe has lost significant educational opportunities as a result of GSHS's failure to do its job, including, most significantly, having to abandon her education at GSHS. As a result of being forced to switch schools, Ms. Doe's was unable to take advanced placement classes at BHS, lost the opportunity to participate in extracurriculars at GSHS such as drama club and sports, and was forced to leave her friends and teachers that she had known for years. While she had previously been in a dedicated "College and Career" class at GSHS to help her prepare for the transition after high school, she did not have similar opportunities and support at BHS and was forced to forgo this guidance and consultation.

65.     The harassment she experienced at GSHS also forced Ms. Doe to change college plans. Prior to the fall of 2017 she planned to attend the University of Northern Colorado, where

her parents and brother had also attended. UNC had an excellent education program and was also likely to offer her significant financial aid. However, after experiencing such harassment from her peers at GSHS, Ms. Doe was concerned that these students and the harassment she experienced, would follow her to UNC, so she made the decision to attend college out of state, even though it would be more costly and less convenient.

66.     Lastly, Ms. Doe's endured severe emotional distress as a result of having to continue to attend school with her perpetrator, the institutional betrayal she experienced, the hostile environment that she was subjected to at GSHS and having to separate from her primary support system, (fellow students, friends, teachers) at GSHS when she need them the most. The school's lack of response not only pushed Ms. Doe out of her own school, but also sent a message to her classmates (and her as well) that the school believed that her claims were either not credible or were exaggerated, since Mr. Smith was the one who remained in school.

67.     The clear message to her friends and fellow students around town was that she was the problem, which only increased the hostility towards her and further prevented her return.

68.     Ms. Doe never returned to classes at GSHS.

## FIRST CLAIM FOR RELIEF
### Violation of Title IX (20 U.S.C. § 1681(a))
#### (Defendant RFSD)

69.     Plaintiff realleges each and every allegation set forth in paragraphs in the previous paragraphs as though fully set forth herein.

70.     Beginning no later than September, RFSD had actual knowledge of, and was deliberately indifferent to, notice that Mr. Smith was being prosecuted for sexual assault.  This notice was provided directly from the Office of the District Attorney.

71.     By no later than October of 2018, RFSD had actual knowledge of notice that Ms. Doe was the victim of that assault, that she was experiencing ongoing and significant sex-based

harassment, including a hostile educational environment due to Mr. Smith's ongoing presence at school, verbal and physical harassment from Mr. Smith and his friends at GSHS in the form of gender specific insults that perpetuated outdated gender stereotypes about women and mocked her sexual assault, and retaliation for reporting gender based violence to the school. RFSD was also on notice at this time of the significant impact that the assault and harassment were having on her education at GSHS.

72.     RFSD's failure to take any action to stop the severe and pervasive sex-based harassment in the form of a hostile educational environment, despite its authority and obligation to do so, constituted deliberate indifference as it was clearly unreasonable in light of known circumstances.

73.     Plaintiff was subjected to significant harm to her educational opportunities and benefits as well as significant emotional distress.

74.     As a result of the hostile environment and resulting distress, Plaintiff's studies and education have suffered substantially.

75.     RFSD, through the inaction of various high-ranking RFSD administrators with the ability and authority to take remedial action to stop the sex-based harassment and discrimination, including Assistant Principal Engle, Principal Paul Freeman, and Superintendent Rob Stein, had actual knowledge of, and were deliberately indifferent to harassment that was so severe, pervasive and objectively offensive that it deprived Plaintiff of access to the educational benefits or opportunities provided by RFSD, in violation of Title IX.

76.     Plaintiff has suffered damages as a result of RFSD's violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), as set forth above.

**SECOND CLAIM FOR RELIEF**
**Violation of 42 U.S.C. § 1983 – Equal Protection**
**(Defendant Assistant Principal Engle)**

77.     Plaintiff realleges each and every allegation set forth in paragraphs in the previous

paragraphs as though fully set forth herein.

78.     Based upon reports he received, Defendant Assistant Principal Engle actually knew

of Mr. Smith's sexual abuse of Ms. Doe and the ongoing sex-based harassment that Ms. Doe was

experiencing at GSHS.

79.     Nonetheless, Defendant Assistant Principal Engle was admittedly deliberately

indifferent to the discrimination suffered by Ms. Doe by refusing to respond in any fashion to it.

80.     The law was clearly established at the time of Defendants' actions and failures to

act such that a reasonable official in Defendants' position would have understood that her or his

conduct implicated Plaintiff's constitutional rights. *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186

F.3d 1238, 1250 (10 Cir. 1999).

81.     Plaintiff has suffered significant damages as a result of these violations of 42 U.S.C.

1983, as set forth above.

**PRAYER FOR RELIEF**

On her claim for relief, Plaintiff seeks the following:

A.     An award of damages to be determined at trial, including, without limitation,

reimbursement and prepayment for all of Plaintiff's expenses incurred; damages for deprivation

of equal access to the educational benefits and opportunities provided by RFSD, damages for past,

present and future emotional pain and suffering, ongoing and severe mental anguish, and loss of

past, present and future enjoyment of life in an amount to be determined by the jury;

B.     An award of punitive damages under 42 U.S.C. § 1983 with respect to Defendant

Assistant Principal Engle;

C.      Statutory and mandatory interest on all sums awarded;

D.      An award of costs and attorney fees (pursuant to 42 U.S.C. § 1988(b)); and

E.      Any other relief as is proper.

**PLAINTIFF DEMANDS A JURY TRIAL OF ALL ISSUES SO TRIABLE**


Dated:  March 23, 2020

Respectfully submitted,

HUTCHINSON BLACK AND COOK, LLC

By:  ___*/s/ John Clune*_____
        John Clune, No. 27684
        Lauren Groth, No. 9797
        Lucy K. Walker, No. 46456
        921 Walnut Street, Suite 200
        Boulder, CO  80302
        (303) 442-6514
        clune@hbcboulder.com
        groth@hbcboulder.com
        walker@hbcboulder.com