## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-184-RBJ

**JANE DOE,**

Plaintiff,

v.

**ROARING FORK SCHOOL DISTRICT** and **PATRICK ENGLE,** in his individual capacity.

Defendants.

_____

## MOTION FOR PARTIAL DISMISSAL
_____

Defendant Patrick Engle, pursuant to Fed. R. Civ. P. 12(b)(6), moves to dismiss the

second claim for relief in Plaintiff Jane Doe's First Amended Complaint and Jury Demand

("Complaint," Docket No. 15).

Certificate of Compliance: Undersigned counsel certifies that he complied with the

Court's practice standards regarding motions to dismiss.

## INTRODUCTION

Ms. Doe alleges that, while a student at Glenwood Springs High School ("GSHS"), she

was subject to sexual harassment stemming from an off-campus sexual assault by classmate John

Smith.  Ms. Doe alleges she suffered two general types of sexual harassment: (1) the continuing

presence of Mr. Smith at GSHS and (2) offensive comments from peers.  Ms. Doe alleges that

she told Mr. Engle, an Assistant Principal at GSHS, about this harassment and he did nothing.

She asserts one claim against Mr. Engle under 42 U.S.C. § 1983 for violating her equal

protection rights by being deliberately indifferent to known sexual harassment.  For the reasons

discussed below, Mr. Engle is entitled to qualified immunity from this claim.

**RELEVANT ALLEGATIONS FROM THE COMPLAINT**[1]

Ms. Doe is a former student at GSHS.  (Compl. ¶¶ 6, 68.)  In October 2016, while a

GSHS student, Doe was sexually assaulted by then-GSHS student John Smith while on a date.

(*Id*. ¶¶ 6-7, 17).  After speaking to a therapist, a report of sexual assault was referred to law

enforcement in summer 2017.  (*Id*. ¶ 20.)  Ms. Doe alleges GSHS received notice from the local

district attorney in fall 2017 that Mr. Smith was being prosecuted for sexual assault.[2]  (*Id*. ¶ 9.)

Ms. Doe alleges that she revealed the assault to a GSHS teacher in March 2017 (*id*. ¶ 20) and

that she and her parents told various GSHS staff members throughout the 2017-18 school year

about it.  (*Id*. ¶¶ 10-11, 21, 25-27, 29, 31, 33, 39, 47, 50.)

Ms. Doe alleges that beginning in October 2017, she and her parents informed Mr. Engle

about "harassment" she was experiencing at GSHS.  (*Id*. ¶ 10.)  In that regard, she alleges Mr.

Engle was told: (1) that Ms. Doe "had been assaulted by Mr. Smith and was having difficulty

dealing with his presence at school, and with the physical and verbal harassment she was

experiencing from his friends because she was a woman who had been sexually assaulted and

because she chose to report that assault" (*id*. ¶ 10); (2) that "she had been assaulted by Mr.

Smith, and that she was being harassed and intimidated by him and his friends and felt unsafe at

GSHS" (*id*. ¶ 25); (3) that "[a]s a result of Mr. Smith's constant presence and the harassment

from friends, Ms. Doe's education was suffering, and she was unsure whether to remain at

---

[1] Mr. Engle accepts the allegations in the Complaint as true for purposes of this Motion only.
[2] There is no allegation that the notice identified the victim of the assault or indicated that the victim was a District student.

GSHS" (*id*. ¶ 26); (4) that Ms. Doe's mother discussed the "sexual assault … and that Ms. Doe was struggling to stay at GSHS" (*id*. ¶ 27); (5) "that she felt like she was being ganged up on and did not feel safe at school" (*id*. ¶ 35); (6) that Ms. Doe reported to Mr. Engle a "crude prank involving a sex toy in the shape of a penis in the GSHS parking lot and that was immediately posted on multiple social media networks" (*id*. ¶ 39); (7) "that she needed help [and] wanted to be able to avoid running into Mr. Smith at school, and wanted to feel safe at school" (*id*.); (8) that Ms. Doe's father sent a photo to Mr. Engle of the above-referenced "prank" and discussed "Mr. Smith's conduct toward Ms. Doe at school" (*id*. ¶ 40); (9) one of Ms. Doe's friends overheard a friend of Mr. Smith saying they would "strangle her" (*id*. ¶ 42); and (10) that a classmate (not Ms. Doe) sent a text to another classmate (not Ms. Doe) that "we need to show [Ms. Doe's friend] and Ms. Doe what rape actually is" and the text was reported to Mr. Engle (*id*. ¶ 58).  While the Complaint asserts that students made other offensive comments to her and that different things were told to different District employees, the above allegations are the extent of what was specifically told to Mr. Engle.

Ms. Doe also alleges that the students who harassed her "were angry that she had reported Mr. Smith for sexual assault" (*id.* ¶ 35), "[warned] her that she had ruined Mr. Smith's life enough and that she should leave him alone" (*id.* ¶ 36), and "started and circulated a petition … to allow Mr. Smith to attend prom" when it appeared GSHS was poised to exclude him (*id.* ¶ 59).

Ms. Doe alleges that after Mr. Engle was informed of certain of the above-referenced incidents of harassment, he "took no action."  (*Id*. ¶¶ 25-26, 28.)  Ms. Doe also alleges that other District employees were informed of the assault, the harassment, and her struggles at school and

did nothing.  (*Id.* ¶¶ 29-33.)  Due to the presence of Mr. Smith and her treatment by peers, Doe

eventually left GSHS and attended another high school.  (*Id.* ¶¶ 46, 51.)

## STANDARD OF REVIEW

A claim may be dismissed under Rule 12(b)(6) "either because it asserts a legal theory

not cognizable as a matter of law or because the claim fails to allege sufficient facts to support a

cognizable legal claim." *Essex Ins. Co. v. Tyler*, 309 F. Supp. 2d 1270, 1271 (D. Colo. 2004).

Well-pleaded factual allegations must be accepted as true and construed in the light most

favorable to the plaintiff.  *E.g.*, *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir.

2007).  However, to survive a motion to dismiss, a complaint must contain "sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  "[T]he plaintiff must do more than articulate a set of facts that could conceivably or

possibly give rise to a claim; he must nudge his claim across the line from conceivable to

plausible." *Havens v. Johnson*, 2012 WL 871195, at *3 (D. Colo. Mar. 13, 2012) (quotation

omitted).  In § 1983 actions against individual government actors, "[i]t is particularly important

… that the complaint make clear exactly who is alleged to have done ***what*** to ***whom***." *Kan.

Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (emphasis in original).

## ARGUMENT

### I.    Qualified Immunity Under § 1983.

Qualified immunity shields government officials from liability for civil damages if their

actions did not "violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Once

raised, a "heavy two-part burden" shifts to a plaintiff. *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th

Cir. 1996). A plaintiff must show: (1) that the defendant violated a constitutional right (2) that

was clearly established at the time of the conduct. *Cassady v. Goering*, 567 F.3d 628, 634 (10th

Cir. 2009). It is insufficient to merely cite a general proposition of law or to define such law at a

"high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011); *Douglas v. Dobbs*, 419

F.3d 1097, 1101 (10th Cir. 2005) ("Warning against rights asserted at too high a level of

generality, the Supreme Court has made clear that the relevant inquiry must be undertaken in the

specific context of the case."). Rather, a plaintiff must show the official would have known that

his "particular conduct" in the situation he confronted violated a plaintiff's constitutional right.

*See al-Kidd*, 563 U.S. at 742. It is not enough that a case may exist regarding the same

generalized principles; to constitute clearly established law, the cases must be so factually similar

that it would put a government official on notice that his or her specific conduct in that situation

would violate the plaintiff's rights. *Yeasin v. Durham*, 2018 WL 300553, *5 (10th Cir. 2018)

("relevant case law must be particularized to the facts of the case currently before the court").

## II.     Mr. Engle Is Entitled to Qualified Immunity.

For her § 1983 equal protection claim, Ms. Doe must establish that Mr. Engle was

deliberately indifferent to known sexual harassment. *Murrell v. Sch. Dist. No. 1, Denver, Colo.*,

186 F.3d 1238, 1250 (10th Cir. 1999). Plaintiff alleges Mr. Engle violated her equal protection

rights by failing to act when he was informed she was struggling at school due to the presence of

Mr. Smith and that she was experiencing physical and verbal harassment from his friends.

> A.     <u>There was no clearly established law that Mr. Engle's conduct implicated Ms. Doe's equal protection rights because there are no allegations that Mr. Engle discriminated against her because of her sex.</u>

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "In cases involving an equal-protection violation based on sexual harassment" a plaintiff must "present[] sufficient evidence that the defendant discriminated against her because of her sex, thereby depriving her of the right to equal protection of the laws." *Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1235 (10th Cir. 2014); *Cf. Huff v. Sheahan*, 493 F.3d 893, 902 (7th Cir. 2007) ("§ 1983 relief is available to a plaintiff claiming a hostile work environment only when she can demonstrate that the defendant acted with discriminatory intent."); *Doe v. Sch. Dist. No. 1, Denver, Colo.*, 2019 WL 3425236, at *7 (D. Colo. July 30, 2019) (when student was sexually assaulted off-campus by classmate and was harassed by peers at school related to the assault, individual school employees were entitled to qualified immunity in part because "there is no allegation that the individual Defendants treated similarly situated male student differently than they treated Plaintiff"). There are no allegations that Mr. Engle discriminated against Ms. Doe because of her sex in failing to respond to her complaints of harassment. Thus, there was no clearly established law that would have put Mr. Engle on notice that his conduct, as alleged, would violate Ms. Doe's equal protection rights.

      B.      *Murrell* does not support Ms. Doe's assertion that the law was clearly established that Mr. Engle's conduct implicated Ms. Doe's equal protection rights.

In the Complaint, Ms. Doe cites *Murrell* to support her allegation that the "law was clearly established at the time of [Mr. Engle's] actions and failures to act such that a reasonable official in [Mr. Engle's] position would have understood that her or his conduct implicated [Ms.

Doe's] constitutional rights." (Compl. ¶ 80.) However, *Murrell* does not support Ms. Doe's assertion of clearly established law that Mr. Engle's conduct implicated Ms. Doe's equal protection rights.

In *Murrell*, the plaintiff was a developmentally and physically disabled female high school student who sustained sexual assault and battery inside her school building at the hands of a male classmate. *Id*. at 1242. Teachers were informed about a particularly disturbing sexual assault that occurred in an unsupervised area of the school and the teachers did nothing in response. *Id*. at 1243. The sexual assaults continued even after the teachers were notified. *Id*. at 1243-44. Eventually, the student's mother found out about the sexual assaults and contacted the school principal. *Id*. at 1244. The mother informed the principal of the assaults and the principal did nothing in response. *Id*. The Tenth Circuit held that the teachers and principal were not entitled to qualified immunity because their conduct violated clearly established constitutional rights of which a reasonable person would have known. *Id*. at 1250-51. The court further held that "a person who exercises the state's supervisory authority may be held liable for consciously acquiescing in sexually harassing conduct by a non-state actor over whom the state actor has authority." *Id*. at 1251. *Murrell* stands for the proposition that a school official is not entitled to qualified immunity when the official is notified of sexual assaults against a student occurring at school and does nothing in response.

*Murrell* would not have put Mr. Engle on notice that his "particular conduct" in the situation he allegedly confronted violated Ms. Doe's equal protection rights. *See, e.g., Yeasin*, 2018 WL 300553, *5 ("The relevant case law must be particularized to the facts of the case currently before the court."). Mr. Engle was allegedly notified that Ms. Doe suffered an off-

campus sexual assault that was unrelated to school, was uncomfortable with the presence of Mr.

Smith at school, and that friends of Mr. Smith made offensive comments to her.  It would not

have been clear to Mr. Engle, under *Murrell*, that failing to respond to this notice would violate

Ms. Doe's equal protection rights.  In *Murrell*, the conduct of which the teachers and principal

were notified of clearly constituted sexual harassment as the conduct was the sexual assault and

battery of a female student by a male student inside the school.  Here, however, the "sexual

harassment" Mr. Engle was allegedly notified of and failed to respond to was not a sexual

assault, but was the presence of Mr. Smith and offensive comments from peers.  As addressed in

the next two sections, there was no clearly established law that the conduct complained of by Ms.

Doe constituted "sexual harassment."

> C.   The law was not clearly established that Mr. Engle would violate Ms.
>      Doe's equal protection rights by failing to respond to the mere presence of
>      Mr. Smith at GSHS.

The first type of "sexual harassment" Mr. Engle was allegedly told about and failed to

respond to was allowing the continued presence of Mr. Smith at GSHS.  (Compl. ¶¶ 10, 26.)

However, there was no clearly established law at the time of Mr. Engle's alleged conduct that

would have put him on notice that failing to address the mere presence of an assaulter at the

same school as a victim would violate the victim's equal protection rights.  Rather, it is unclear

whether the mere presence of an assaulter at the same school as the victim can constitute "sexual

harassment."  Further, Tenth Circuit precedent suggests that the mere presence of an assaulter at

the same school as the victim does not constitute "sexual harassment."

In *Farmer v. Kansas State University*, the court addressed "the narrow question" of

whether the "Plaintiff was required to allege, as a distinct element of her Title IX claim, that

KSU's deliberate indifference caused her to suffer actual further harassment, rather than alleging that Defendant's post-assault deliberate indifference made her … vulnerable to harassment." 918 F.3d 1094, 1102 (10th Cir. 2019) (internal quotation marks omitted).  The issue was whether the university was deliberately indifferent to sexual harassment when it permitted male students to continue attending the university with female students whom they had previously sexually assaulted at a fraternity house.  *Id*. at 1097.  The plaintiff female students alleged that "KSU's deliberate indifference to their reports of rape made them vulnerable to harassment by alleging that the fear of running into their student-rapists caused them, among other things, to struggle in school, lose a scholarship, withdraw from activities KSU offers its students, and avoid going anywhere on campus without being accompanied…."  *Id*. at 1104-05.

The plaintiff female students alleged that for Title IX liability, they did not need to allege that the university's deliberate indifference caused them to undergo further incidents of sexual harassment, but rather, they only needed to allege that the deliberate indifference made them "vulnerable" to sexual harassment.  *Id*.  The court agreed and stated that "Plaintiffs have sufficiently alleged that KSU's deliberate indifference made each of them 'vulnerable to' sexual harassment by allowing their student-assailants—unchecked and without the school investigating—to continue attending KSU along with Plaintiffs."  *Id*.  Implicit in the court's holding is that the mere presence of an assaulter at the same school as the victim is not sexual harassment itself, but rather makes the victim "vulnerable" to further incidents of sexual harassment.  Thus, Title IX, at least in the Tenth Circuit, permits a plaintiff to allege that a school's deliberate indifference made them vulnerable to sexual harassment rather than causing them to undergo further sexual harassment.  However, a § 1983 equal protection claim requires a

plaintiff allege that a school official was deliberately indifferent to "known sexual harassment." *See Murrell*, 186 F.3d at 1250.  Unlike Title IX, it is not sufficient to state that the deliberate indifference made a plaintiff merely vulnerable to sexual harassment.  Under *Farmer*, the mere presence of an assaulter at the same school as a victim should not be considered "sexual harassment."  Thus, Mr. Engle's alleged failure to address Ms. Doe's concern about the "constant presence" of Mr. Smith cannot be deliberate indifference to known sexual harassment for purpose of an equal protection claim.

Even if *Farmer* can be used to argue that the mere presence of an assaulter at the same school as the victim can constitute sexual harassment, it was decided in 2019, after Mr. Engle's conduct in this case and thus he could not have been on notice of its holding.  Further, the law was not clearly established.  *See, e.g., Kollaritsch v. Mich. State Univ. Bd. of Tr.*, 944 F.3d 613, 622, 624-25 (6th Cir. 2019) (a school's deliberate indifference must cause "some further incident of actionable sexual harassment" and the mere presence of an assaulter at the same school as the victim is not "actionable further sexual harassment."  To the extent other circuits hold otherwise, the cases are not controlling or persuasive.).

In sum, the law was not clearly established at the time of Mr. Engle's alleged conduct that failing to respond to notice that a sexual assault victim was experiencing distress due to the mere presence of her assaulter at school would violate Ms. Doe's equal protection rights.

          D.    <u>The law was not clearly established that failing to address the offensive comments allegedly reported to Mr. Engle would violate Ms. Doe's equal protection rights.</u>

While Ms. Doe makes various allegations in the Complaint about comments from peers and that she reported different things to different District staff members, she only alleges that

Mr. Engle was notified of the following: (1) "physical and verbal harassment … because she was a woman who had been sexually assaulted and because she chose to report that assault" (Compl. ¶ 10); (2) "she was being harassed and intimidated by him and his friends" (*id*. ¶ 25); (3) "harassment from friends" of Mr. Smith (*id*. ¶ 26); (4) a "crude prank involving a sex toy in the shape of a penis in the GSHS parking lot and immediately posting the prank to multiple social media networks" (*id*. ¶ 39); (5) one of Ms. Doe's friends overheard a friend of Mr. Smith saying they would "strangle her" (*id*. ¶ 42); a classmate (not Ms. Doe) sent a text to another classmate (not Ms. Doe) that "we need to show [Ms. Doe's friend] and Ms. Doe what rape actually is" and the text was reported Mr. Engle.  (*Id*. ¶ 58).  For her § 1983 equal protection claim, these allegations are the only ones that arguably "make clear" what was specifically told to Mr. Engle and what he failed to do in response.  *Cf. Kan. Penn Gaming*, 656 F.3d at 1215 (In § 1983 actions against individual government actors, "[i]t is particularly important … that the complaint make clear exactly who is alleged to have done ***what*** to ***whom***.") (emphasis in original).

It cannot be argued that the notice of general "harassment" or "intimidation" constitutes notice to Mr. Engle of "known sexual harassment."  These allegations are general in nature and do not show that Mr. Engle was told anything specific about the nature of the harassment or intimidation, much less that the harassment or intimidation constituted "sexual harassment."  The only allegations that contain some specificity as to what was actually told to Mr. Engle are the "crude prank" incident, that a friend of Ms. Doe overheard another student saying they would "strangle" Ms. Doe, and that a student texted another student (neither being Ms. Doe), that "we need to show [Ms. Doe's friend] and Ms. Doe what rape actually is."  The comment that a student would "strangle" Ms. Doe, while disturbing and inappropriate, is not indicative of

"sexual harassment."  This leaves two offensive comments or incidents that allegedly were communicated to Mr. Engle that could arguably be sexual in nature: the "crude prank" and the comment regarding what "rape actually is."  As for the "crude prank" incident, there are no allegations in the Complaint that the "crude prank" was directed to Ms. Doe, that she witnessed the crude prank, what the prank consisted of, or how Mr. Smith was involved in the prank.

In a case similar to this one, *Doe v. School District No. 1, Denver, Colorado*, a plaintiff female high school student alleged that a male classmate sexually assaulted her off-campus at the male classmate's home.  2019 WL 3425236, *1.  The plaintiff alleged that she experienced sexual harassment in the form of offensive comments by peers stemming from the report of the assault such as "you'll lose your virginity first," that a male student would "constantly stare at [her], smirk at her" and other students "would make drawings of [her] telling her to kill herself, call her names, start rumors about her and make rape jokes about the male student that assaulted her" and one student "shoved her down while at lunch [off campus] and then called her a 'dirty slut.'"  *Id.* at *2.  The student alleged that these comments were reported to school officials and these officials "allowed a hostile school to grow and flourish."  *Id.* at *7.  The court held that the individual school employee defendants were entitled to qualified immunity from the § 1983 equal protection claim because there was no "allegation that the individual Defendants treated a similarly situated male student differently."  *Id.*  The court also held that in the context of Title IX, the offensive comments described above "do not suggest that Plaintiff was treated unfavorably because she is female; rather, they suggest that other students harassed her because they learned she had accused Student 1 of" sexual assault.  *Id.* *4; *see also Wolfe v. Fayetteville, Ark. Sch. Dist.*, 648 F.3d 860, 866-67 (8th Cir. 2011) ("for a Title IX deliberate indifference

claim … acts of name-calling do not amount to sex-based harassment, even if the words used are gender-specific, unless the underlying motivation for the harassment is hostility toward the person's gender."). Like in *Doe v. School District No. 1, Denver, Colorado*, here, based on the allegations in the Complaint, the offensive comments suggest that Ms. Doe was treated unfavorably because she accused Mr. Smith of sexual assault, and they were not made to discriminate against her because of her gender. (*See, e.g.,* Compl. ¶¶ 35, 36, 56.) In sum, the law was not clearly established that failing to address the comments communicated to Mr. Engle would violate Ms. Doe's equal protection rights.

Ms. Doe may point to *Doe v. Hutchinson* to support her argument that the law was clearly established that offensive comments like those alleged by Ms. Doe are actionable under her equal protection claim. 728 F. App'x 829 (10th Cir. 2018). However, *Hutchinson* addressed an equal protection claim against the harasser himself and thus is dissimilar to this case. The allegations were that the defendant teacher "routinely and openly spoke to and about female students in sexualized terms, and that he spoke about his own sexual acts in front of students including Doe" and told Doe she was "used to having balls between her legs," he "request[ed] another female gym student engage in a sexually suggestive dance," he "frequently convinced female students to remove their shirts and engage in activities only in their sports bras," and "encouraged Doe's boyfriend to share details of Doe's sexual history with other students." *Id*. at 833. In *Hutchinson*, the comments were much more numerous and specifically sexual in nature and were allegedly made by the defendant teacher. Here, the defendant is a school official who was told of alleged offensive comments made by others and what was allegedly actually told to Mr. Engle consisted of only one comment and one "prank" that were sexual in nature.

In sum, there was no clearly established law that would have put Mr. Engle on notice that failing to respond to the information he was provided regarding offensive comments would violate Ms. Doe's equal protection rights.

## **CONCLUSION**

For the foregoing reasons, Defendant Mr. Engle respectfully requests that he be granted qualified immunity and that Ms. Doe's second claim for relief be dismissed in its entirety.

RESPECTFULLY SUBMITTED this 1st day of May, 2020.

SEMPLE, FARRINGTON, EVERALL & CASE, P.C.

*s/ Daniel P. Spivey*
Michael Brent Case
Daniel P. Spivey
1120 Lincoln Street, Suite 1308
Denver, CO 80203
(303) 595-0941
bcase@semplelaw.com
dspivey@semplelaw.com
ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of May, 2020, a correct copy of the foregoing was filed and served via CM/ECF to the following:

HUTCHINSON BLACK AND COOK, LLC
John Clune
Lauren Groth
Lucy K. Walker
921 Walnut Street, Suite 200
Boulder, CO 80302
(303) 442-6514
clune@hbcboulder.com
groth@hbcboulder.com
walker@hbcboulder.com
*Counsel for Plaintiff*

By:   *s/ Kathleen Schmidt*