IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 1:20-cv-00184-RBJ

JANE DOE,

    Plaintiff,

v.

ROARING FORK SCHOOL DISTRICT and
PATRICK ENGLE, in his individual capacity,

    Defendants.

---

## ORDER ON DEFENDANT'S PARTIAL MOTION TO DISMISS

---

This matter is before the Court on individual defendant Engle's partial motion to dismiss. ECF No. 22. For the reasons discussed below, the motion is DENIED.

### I. FACTUAL BACKGROUND

The following facts are alleged in the First Amended Complaint (ECF No. 15) and are assumed to be true for purposes of the pending motion. I omit some allegations that do not relate to defendant Engle. Plaintiff Jane Doe (a pseudonym) is a resident of Glenwood Springs, Colorado. ECF No. 15 at ¶1. Defendant Patrick Engle was the Assistant Principal of Glenwood Springs High School ("GSHS") during the 2017–2018 school year. In that role he held disciplinary authority at the school. *Id.* at ¶¶3, 30. Defendant Roaring Fork School District is a Colorado public school district. *Id.* at ¶2.

In October 2016 fellow GSHS student John Smith (also a pseudonym) raped Ms. Doe.

*Id.* at ¶17.  She was a sophomore at the time.  *Id.* at ¶6.  In response Ms. Doe began to isolate herself from school activities, and her performance at school suffered.  She became depressed and cried herself to sleep.  Ms. Doe's teachers contacted her parents about a potential suicide risk.  *Id.* at ¶¶18–19.  A few months later, in March 2017, Ms. Doe confided in GSHS teacher Ms. Burns about the sexual assault.  Ms. Burns referred Ms. Doe to counseling, and in the summer of 2017 Ms. Doe disclosed the assault to her parents and to a therapist.  *Id.* at ¶20.

Ms. Doe's assault was referred to the Glenwood Springs Police Department.  In August 2017 Ms. Doe and her mother informed the school guidance counselor that Ms. Doe had been sexually assaulted by a GSHS student, though Ms. Doe did not identify which one.  Ms. Doe asked to review class lists so she could ensure that she was not in any of the same classes as Mr. Smith.  Ms. Doe also told the guidance counselor that the Glenwood Police were investigating the incident.  *Id.* at ¶21.  In September 2017 the Glenwood Springs District Attorney's Office notified the school that Mr. Smith was being prosecuted as a juvenile for sexual assault.  GSHS ignored the notice.  *Id.* at ¶¶22–23.

Throughout the fall of 2017 Ms. Doe had to interact with her assailant and suffered repeated instances of bullying and harassment at school and online.  She frequently encountered Mr. Smith in the hallways.  He would follow her to and from classrooms and show up to one of her classes taught by a teacher for whom Mr. Smith was a teaching assistant.  Mr. Smith's friends also followed Ms. Doe, pulled on her backpack, spoke loudly about her to other students, and said things like she was always "causing drama" and "trying to get attention."  *Id.* at ¶24.  They would also motion as if they were going to punch her.  *Id.* at ¶35.  In November 2017 Ms. Doe was placed on anti-depressants for the first time to manage her anxiety.  *Id.* at ¶34.

In October 2017 Ms. Doe went to Mr. Engle and told him that Mr. Smith had assaulted her, that he and his friends were harassing and intimidating her, that she felt unsafe at GSHS, that she was struggling at school, and that she was unsure whether to remain at GSHS. Mr. Engle did nothing in response. Ms. Doe felt that defendant did not believe her. Ms. Doe's mother then called Mr. Engle to discuss Mr. Smith, his prosecution, and Ms. Doe's struggles at GSHS. At this point Mr. Engle still did not take any action. *Id.* at ¶¶26–28. In the following month Ms. Doe and her parents spoke to various other school officials and teachers who also did nothing. No disciplinary action was taken against Mr. Smith or his friends, and no safety measures or accommodations were put in place for Ms. Doe. *Id.* at ¶¶29–34.

Ms. Doe continued to be targeted at school despite these conversations with school officials. Ms. Doe's classmates used her social media accounts to question whether she had been raped, taunt her for the assault, send her photos of Mr. Smith, and tell her that she had ruined Mr. Smith's life and should leave him alone. *Id.* at ¶35–36. Mr. Smith's friends continued their behavior. Mr. Smith himself continued to follow her. On one occasion Mr. Smith and his friends were in a car and sped up while driving at Ms. Doe in the parking lot as if to hit her. Ms. Doe reported this to GSHS. In response she was given a spot in the teacher's parking lot, but no other action was taken. *Id.* at ¶37. Ms. Doe told defendant Engle that she was being ganged up on and did not feel safe at school. *Id.* at ¶35.

On December 13, 2017 Mr. Smith appeared in court on his sexual assault charges. A few hours later he and his friends engaged in a prank in the school parking lot involving a sex toy in the shape of a penis. They posted the prank to multiple social media sites, and Ms. Doe's classmates sent screenshots of the posts to her and asked whether she saw what Mr. Smith had

done. On December 14 Ms. Doe told Mr. Engle about the prank and again discussed the assault with him. She told him that she needed help, that she wanted to avoid running into Mr. Smith at school, and that she wanted to feel safe at school. *Id.* at ¶¶38–39. Ms. Doe's father also received photos of the prank and forwarded them to Mr. Engle. He subsequently called Mr. Engle to discuss Mr. Smith's conduct towards Ms. Doe at school. *Id.* at ¶40.

Neither Mr. Engle nor anyone else disciplined Mr. Smith or his friends. Ms. Doe was told that the situation was being "dealt with," but no measures were put in place or actions taken. In January 2018 Ms. Doe's friends heard one of Mr. Smith's friends say that if they got the chance, they would strangle Ms. Doe. Ms. Doe reported this to Mr. Engle. He responded that there was nothing they could do because "it is not illegal to be an asshole." *Id.* at ¶¶41–42.

Ms. Doe continued to struggle at school in early 2018, and her parents became concerned about the possibility of self-harm and suicidal thoughts. In February 2018 Ms. Doe toured Bridges High School as her family began to explore alternatives to her current school because she felt unsafe at GSHS. *Id.* at ¶¶43, 45–46. Ms. Doe's mother met with Mr. Engle again on March 5, 2018. She discussed the "complete lack of protection" GSHS had provided to her daughter and asked if the school had taken or would take action against Mr. Smith. Mr. Engle acknowledged that the school had done nothing to help her. He also offered no assistance to Ms. Doe at that time. Ms. Doe's mother sent an email on March 9, 2018 asking what actions the school had taken. Mr. Engle responded, "Unfortunately for this situation as it pertains directly to [Ms. Doe] as we had talked about, the school has taken no actions." *Id.* at ¶¶47–48.

On March 13, 2018 Ms. Doe and her parents met with defendant Engle and GSHS Principal Paul Freeman. Mr. Freeman stated he was unaware that GSHS had any knowledge of

Case 1:20-cv-00184-RBJ   Document 47   Filed 12/29/20   USDC Colorado   Page 5 of 17

who the victim in Mr. Smith's sexual assault was. He implied there was nothing the school could realistically do with only forty days left in the school year. That same day Ms. Doe enrolled in Bridges High School. *Id.* at ¶¶50–51. On April 11, 2018 Mr. Smith pled guilty to a lesser charge in his sexual assault case. Mr. Engle notified Ms. Doe's parents via email that Mr. Smith had been expelled from GSHS for the rest of the year. Six days later, Ms. Doe's parents were told that the school district had reversed its expulsion decision, and that Mr. Smith would be permitted to and let Mr. Smith continue to attend GSHS until graduation. *Id.* at ¶¶54 – 46.

Students at GSHS were aware that Mr. Smith had been expelled and then reinstated. Many of Ms. Doe's former classmates responded by taunting Ms. Doe with names like "crazy bitch" and "pornstar." They made comments implying Ms. Doe had lied about the sexual encounter being nonconsensual. When one of Ms. Doe's friends posted a supportive post on social media about her, former classmates questioned her rape and suggested it was more likely that Ms. Doe had raped Mr. Smith than vice versa. Former classmates also sent Ms. Doe's friends messages that she was a liar, and that they should stop hanging out with her. One of her friends received a text message stating "we need to show [Ms. Doe's friend] and [Ms. Doe] what rape actually is." The friend reported the text to Mr. Engle. *Id.* at ¶¶57–58.

GSHS informed Mr. Smith that he was not permitted to attend prom. This appears be to the sole disciplinary measure taken against Mr. Smith. In response other GSHS students circulated a petition to allow Mr. Smith to attend and to instead prohibit Ms. Doe from attending. Mr. Smith finished his school year at GSHS and graduated, while Ms. Doe finished her school year at Bridges High School. Ms. Doe never returned to GSHS. *Id.* at ¶¶59–60, 68. As a result of switching schools Ms. Doe was unable to take Advanced Placement classes, could not

participate in the extracurricular activities she had had at GSHS, and forewent a dedicated college-related class and other college guidance only available at GSHS.  Ms. Doe ultimately decided to attend college out of state, instead of at University of Northern Colorado as she originally planned, because she was afraid that the harassment she had faced from GSHS students would follow her there.  *Id.* at ¶¶64–65.

## II. PROCEDURAL BACKGROUND

Plaintiff first filed this case on January 22, 2020.  ECF No. 1.  She filed an amended complaint on March 23, 2020.  ECF No. 15.  In her amended complaint plaintiff alleged that Assistant Principal Engle violated her equal protection rights under § 1983, and that Roaring Fork School District violated her rights under Title IX.  *Id.* at ¶¶69–81.  On May 1, 2020 defendant Engle filed a partial motion to dismiss the claim against him on qualified immunity grounds.  ECF No. 22.  Plaintiff filed her response on May 22, 2020.  ECF No. 29.  Defendant replied on June 5, 2020.  ECF No. 33.  The partial motion to dismiss is now ripe for review.

## III. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the Court must accept the well-pled allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), conclusory allegations are not entitled to be presumed true.  *Iqbal*, 556 U.S. at 681.

However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

## IV. ANALYSIS

Defendant argues that he is entitled to qualified immunity on the only claim brought against him, violation of plaintiff's equal protection rights under 42 U.S.C. § 1983. "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). To avoid application of qualified immunity, a plaintiff must prove that (1) defendant violated a constitutional right, and (2) the constitutional right was clearly established at the time it was allegedly violated. *Id.* at 232; *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A reviewing court has discretion to address either prong first. *Pearson*, 555 U.S. at 236.

A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he or she was doing violates that right. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)) (internal quotations omitted). In this circuit a right is clearly established "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted).

Clearly established law should not be defined at a high level of generality. *White v. Pauly*, 137 S.Ct. 548, 552 (2017) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)) (internal

7

quotations omitted).  "Although a plaintiff need not identify a case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate."  *Ali v. Duboise*, 763 F. App'x 645, 650 (10th Cir. 2019) (unpublished) (citing *Mullenix*, 577 U.S. at 12) (internal quotations omitted); *see also White*, 137 S.Ct. at 551.  But the Tenth Circuit has also repeatedly counseled that "[w]e cannot find qualified immunity whenever we have a new fact pattern."  *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007).  A defendant asserting qualified immunity at the motion to dismiss stage is subject to a more challenging standard of review than would apply on summary judgment.  *Thomas*, 765 F.3d at 1194.

In asking the court to grant him qualified immunity, defendant explicitly contests only prong two of the qualified immunity test.  Defendant argues that the constitutional right plaintiff alleges was not clearly established at the time of the alleged violation.  ECF No. 22 at 5–14.  The constitutional violation plaintiff alleges is that defendant was deliberately indifferent to the discrimination suffered by plaintiff, which consisted of sexual abuse and ongoing sex-based harassment.  ECF No. 15 at ¶¶78–79.  I first analyze whether the law was clearly established.  I then address each of defendant's arguments for why, in his opinion, it was not.

The constitutional right plaintiff alleges was clearly established under *Murrell* at the time of defendant's actions.  In *Murrell* the Tenth Circuit held that "a person who exercises the state's supervisory authority may be held liable for consciously acquiescing in sexually harassing conduct by a non-state actor over whom the state actor has authority."  *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1251 (10th Cir. 1999).  A principal and multiple teachers sought qualified immunity against claims of equal protection violations under § 1983 based on sexual assault.  The plaintiff alleged that the school officials did not nothing in response to

reports from her mother indicating plaintiff had suffered sexual assault and battery at the hands of another student. *Id.* at 1250–51. The court denied qualified immunity because the defendants had supervisory authority over the school's students, and because plaintiff had properly alleged that they were deliberately indifferent to the sexually harassing conduct. *Id.* at 1252.

Plaintiff's allegations here fall squarely within *Murrell*. To state a claim for deliberate indifference a plaintiff must state facts sufficient to allege that a defendant (1) knew of and (2) acquiesced to the discriminatory conduct of another. *Murrell*, 186 F.3d at 1250 (citing *Jojola v. Chavez*, 55 F.3d 488, 490 (10th Cir. 1995)). Deliberate indifference to student-on-student harassment occurs "only where the [actor's] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648 (1999) (discussing deliberate indifference under Title IX).

Plaintiff has sufficiently alleged that defendant Engle's response—or lack thereof—constitutes deliberate indifference. She and her parents reported Mr. Smith's rape of her to defendant Engle. Defendant had supervisory authority over Mr. Smith as the Assistant Principal of the school that both Mr. Smith and Ms. Doe attended. However, he took no action in response to being told about the assault. Ms. Doe then alleges subsequent sexual harassment by Mr. Smith, his friends, and other classmates over the course of fall 2017 and winter 2018. She also alleges both her and her parents' informing defendant on multiple occasions about this conduct and specifically seeking his help. Mr. Engle continued to not respond, taking no disciplinary action against Mr. Smith and putting in place no measures to protect Ms. Doe at GSHS. If Ms. Doe's allegations are true, and at this stage I must accept them as such, defendant Engle "exercise[d] the state's supervisory authority" and "consciously acquiesce[ed] in sexually

9

harassing conduct by a non-state actor over whom the state actor has authority." *Murrell*, 186 F.3d at 1251.

Defendant attempts to persuade the Court that he is entitled to qualified immunity by distinguishing *Murrell* in various ways. He first argues that *Murrell* does not support plaintiff's assertion because it "stands for the proposition that a school official is not entitled to qualified immunity when the official is notified of sexual assaults against a student occurring at school and does nothing in response." ECF No. 22 at 7. This attempt to narrow *Murrell* is unavailing. The *Murrell* court did not constrain its holding to situations where deliberate indifference was in response to sexual harassment on school grounds. The court stated simply "a governmental official or supervisory employee may be held liable under section 1983 upon a showing of deliberate indifference to known sexual harassment." *Murrell*, 186 F.3d at 1250.

In *Murrell* itself the Tenth Circuit wrote "[w]e have never said that there must be a case presenting the exact fact situation at hand in order to give parties notice of what constitutes actionable conduct. Rather, we require parties to make reasonable applications of the prevailing law to their own circumstances." 186 F.3d at 1251. The court explained

> In this circuit, it has been clearly established since our holding in 1989 in *Starrett*, 876 F.2d at 814, that "sexual harassment . . . can violate the Fourteenth Amendment right to equal protection of the laws." *See Woodward*, 977 F.2d at 1398. Moreover, it has been clearly established since at least 1992 that a person who exercises the state's supervisory authority may be held liable for consciously acquiescing in sexually harassing conduct by a non-state actor over whom the state actor has authority. . . .

*Id.* at 1251. The defendant in *Murrell* argued that no case had ever held a school employee liable for sexual harassment under the Fourteenth Amendment, and that he was therefore entitled to qualified immunity. The court rejected this argument because it tried to carry the clearly established concept "to an extreme." *Id.* Defendant Engle's argument here attempts to do the

10

same, and I similarly reject it.  The factual distinctions between *Starrett* and *Woodward* as compared to *Murrell* are much greater than the distinctions between *Murrell* and Ms. Doe's allegations here.  *See Starrett v. Wadley*, 876 F.2d 808 (10th Cir. 1989) (holding male supervisor's sexual harassment of female employee deprived her of right to equal protection under § 1983); *Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992) (articulating supervisory liability under § 1983 as "actual knowledge and acquiescence" in the context of employee sexual harassment within a police department).

The Tenth Circuit's decision in *Doe v. Hutchinson* also supports a denial of qualified immunity in contrast to defendant's position.  There the court denied a teacher qualified immunity for his *direct* sexual harassment of a student.  Despite this difference, when addressing the clearly established prong it defined the right at a similar level of generality as in *Murrell*.  It stated "[w]e have previously held 'the law holding that sexual harassment is actionable as an equal protection violation has long been clearly established.'"  *Doe v. Hutchinson*, 728 F. App'x 829, 834 (10th Cir. 2018) (unpublished) (quoting *Sh.A. ex rel. J.A. v. Tucumcari Mun. Sch.*, 321 F.3d 1285, 1288 (10th Cir. 2003)).  The court explained that *Sh.A.* made clear

> [T]he proposition that 'sexual harassment which gives rise to a violation of equal protection in the employment context will also do so in the teacher-on-student context'. . . . Accordingly, the question is not whether the facts of *Sh.A.* were sufficiently similar to those alleged in Doe's complaint, but whether our case law would make it clear to reasonable officials that Hutchinson's alleged conduct created a hostile environment.

*Id.* at 834–35.

Similarly, here the question is not whether plaintiff has alleged facts sufficiently similar to the facts in *Muller*, but instead whether our case law would make it clear that defendant Engle's conduct constituted deliberate indifference.  It does.  *See also Burke v. New Mexico*, 696

F. App'x 325, 330–31 (10th Cir. 2017) (unpublished) (stating that "deliberate indifference to known sexual harassment can, under certain circumstances, serve as a basis for supervisory liability under the equal-protection theory," but holding that plaintiff had not sufficiently alleged each defendant in a supervisory role actually acquiesced in her harassment).

Defendant next tries to subvert *Murrell* by arguing the law was not clearly established that defendant would violate plaintiff's equal protection rights by failing to respond to Mr. Smith's "mere presence" at the school. ECF No. 22 at 8. He points to *Farmer* to support this proposition. In *Farmer* the court found that under Title IX plaintiffs did not need to allege that the university's deliberate indifference caused them to undergo further incidents of sexual harassment. They only needed to allege that the deliberate indifference made plaintiffs "vulnerable" to sexual harassment. *Farmer v. Kansas State Univ.*, 918 F.3d 1094, 1103 (10th Cir. 2019). Mr. Engle reads *Farmer* as implying that the mere presence of an assaulter at a school does not constitute harassment but instead simply makes the plaintiff vulnerable to harassment. According to defendant this is insufficient for § 1983 liability, which requires deliberate indifference to "known" harassment.

I agree with plaintiff that Mr. Engle's reading of *Farmer* is convoluted. More importantly, however, it is irrelevant. Ms. Doe has alleged much more than "mere presence" here. Mere presence would be exactly what the words say—Mr. Smith and Ms. Doe continuing to attend the same school, with only the possibility of chance encounters. But Ms. Doe has alleged persistent, proactive conduct by her sexual assaulter and his friends, including following her in the hallways, showing up in one of her classes, and speeding up while driving at her in a car, among other incidents. This is very different than Ms. Doe's having just "a general fear of

running into [her] assailant[]." *Id.* at 1105.

Finally, defendant argues the law was not clearly established that he would violate plaintiff's equal protection rights by "failing to address the offensive comments" allegedly reported to him. ECF No. 22 at 10. Defendant tries to convince the Court that he was not told anything specific about the nature of the harassment or intimidation. ECF No. 22 at 11. Defendant Engle's argument is essentially that these allegations were insufficiently detailed for him to act on. Evidently, in defendant's mind sexual harassment is only "known" to him if he knows exactly who was involved, where it happened, when it happened, and if he is completely sure that the harassment is sexual in nature.

This argument fails for four reasons. First, this level of specificity is not required in a complaint. As discussed earlier, for her deliberate indifference claim plaintiff must allege that defendant Engle knew of and acquiesced to the discriminatory conduct of another. *Murrell*, 186 F.3d at 1250. Plaintiff has met this threshold with the array of specific conduct she alleges that Mr. Smith and other classmates engaged in, and that defendant knew about but did not respond to. At a minimum this includes the sexual assault itself; Mr. Smith's following Ms. Doe in the GSHS hallways; his friends' following her and taunting her physically and verbally; the sex toy prank; and the threat from Mr. Smith's friends that they would "strangle her." The contours of each individual incident, exactly how much defendant Engle knew about each one, and the extent to which he responded (or did not) are evidentiary questions possibly appropriate for the summary judgment stage, not here.

Second, defendant does not convince this Court that plaintiff's complaint alleges only "general" harassment and intimidation instead of *sexual* harassment. Mr. Engle argues that there

are no plausible allegations that any of the comments by Ms. Doe's peers were motivated by gender, and thus he would not have known that his failure to respond would violate her equal protection rights. ECF No. 22 at 10–11. I disagree. Plaintiff has alleged that Mr. Smith's friends launched gender-based comments at her like she was always "causing drama" and "just trying to get attention." She was called a "crazy bitch" and a "pornstar." She was subject to photos of a prank that involved a sex toy, orchestrated by her sexual assailant on the same day that he was in court on his criminal case for sexually assaulting her. She was taunted for the assault and questioned about whether the sexual encounter was actually nonconsensual.

The question here is whether this verbal and physical harassment can constitute sexual harassment sufficient to put defendant Engle on notice. I find that it does. In fact, it is absurd to paint these allegations as anything other than predominantly sexual harassment, particularly when plaintiff has alleged that they all relate directly to the sexual assault she underwent, an extreme form of sexual harassment itself. In *Hutchinson* the Tenth Circuit stated, "we include comments and actions that are inherently sexual in nature under the rubric of 'gender-related.'" 728 F. App'x at 830. That this conduct may have been partly motivated by, or even prompted by, plaintiff's reporting of Mr. Smith, does not mean it is not sexual harassment.

Third, requiring this level of specificity of sexual harassment allegations to overcome an argument for qualified immunity would gut the deliberate indifference portion of § 1983. Under Engle's approach, defendants such as him could avoid liability for deliberate indifference to sexual harassment merely by pointing to details of incidents that a victim did not provide. Instead of spurring school officials, supervisors, and others to investigate or otherwise respond upon learning about alleged sexual harassment and assault, these government officials could sit

14

back and ignore every instance of such harmful conduct that was not reported to them in great detail.  This is not how § 1983 was meant to operate.

Fourth and finally, here too defendant cherry-picks only part of plaintiff's allegations in an effort to minimize the harassing conduct.  Comments alone can constitute sexual harassment if they are sufficiently severe and pervasive.  *Hutchinson*, 738 F. App'x at 832–33.  But here the harassing conduct involved much more than comments.  It included plaintiff being physically followed and suffering verbal and physical threats.  The Court will not take defendant's invitation to dissect plaintiff's claim and then analyze qualified immunity as to each small piece. The law requires me to assess whether the overall constitutional right plaintiff alleges was clearly established at the time of these events.

In addition to his attempts to narrow *Murrell*, defendant argues that plaintiff's claim includes "no allegations that Mr. Engle discriminated against her because of her sex."  ECF No. 22 at 5.  Though defendant articulates this as an argument under the "clearly established" prong, the Court finds it closer to an argument that plaintiff has not alleged a constitutional violation.  In either case, however, the Court is not convinced by the argument.  Defendant misstates the requirements for the constitutional violation plaintiff alleges.

Plaintiff's claim is that defendant was deliberately indifferent to discrimination she faced. As plaintiff notes, defendant's argument conflates direct and supervisory liability under § 1983. Defendant points to no applicable authority that indicates a deliberate indifference claim in the sexual harassment context must allege discrimination on the basis of sex by the defendant. *Eisenhour*, the one binding case in this Circuit that defendant cites to support his position, did not involve a deliberate indifference claim.  Instead the court analyzed whether the defendant

15

judge's discrimination was based on his employee's sex because that case involved liability for his *direct* sexual harassment of her. *Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1235 (10th Cir. 2014). The cases cited by *Eisenhour* for this proposition all likewise involved claims of direct sexual harassment, not deliberate indifference. *Lankford v. City of Hobart*, 27 F.3d 477, 479–80 (10th Cir. 1994); *Noland v. McAdoo*, 39 F.3d 269, 272 (10th Cir. 1994); *Woodward*, 977 F.2d at 1396–99; *Starrett*, 876 F.2d at 814–15. Meanwhile, decisions addressing claims of deliberate indifference have *not* required allegations that the defendant himself have engaged in discrimination motivated by sex. *E.g. Davis*, 526 U.S. at 643–46 (Title IX); *Farmer*, 918 F.3d at 1103 (Title IX); *Burke*, 696 F. App'x at 330–31 (§ 1983); *Murrell* 186 F.3d at 1250–51 (§ 1983); *Doe through Doe v. Brighton Sch. Dist. 27J*, No. 19-CV-0950-WJM-NRN, 2020 WL 886193, at *9–11 (D. Colo. Feb. 24, 2020), *as amended* (Mar. 2, 2020) (§ 1983); *Doe No. 1 v. Boulder Valley Sch. Dist. No. Re-2*, No. 11-CV-02107-PAB-KLM, 2012 WL 4378162, at *6–7 (D. Colo. Sept. 25, 2012), *aff'd*, 523 F. App'x 514 (10th Cir. 2013) (§ 1983).

The one case defendant cites that involves deliberate indifference and that could be read as requiring allegations of discrimination on the basis of sex is *Doe v. Sch. Dist. No. 1, Denver, Colorado*, No. 1:18-CV-03170-RM-STV, 2019 WL 3425236 (D. Colo. July 30, 2019), *rev'd and remanded on other grounds*, 970 F.3d 1300 (10th Cir. 2020). In that case plaintiff pled both deliberate indifference and direct discrimination (hostile environment) claims. When analyzing qualified immunity, the court articulated the alleged constitutional violation as plaintiff "receiv[ing] unequal treatment because she is female." *Id.* at *7. The court did not specify which of these claims that language addressed, but it seems most applicable to direct discrimination. To the extent the court's analysis also applied to the deliberate indifference

16

claim, it is against the weight of authority in this jurisdiction.

Plaintiff Ms. Doe has met both prongs of the qualified immunity test. She has alleged a colorable violation of her equal protection rights under § 1983, and the law on this constitutional violation was clearly established at the time of these allegations. Defendant Engle is not entitled to qualified immunity at this stage in the proceedings.

## ORDER

Defendant Engle's partial motion to dismiss (ECF No. 22) is DENIED.

DATED this 29th day of December, 2020.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge